837 P.2d 105 (1992)
Ida Marie (Pavao) BECK, Individually, and as Personal Representative of the Estate of Jerrie Beck, Appellant,
v.
STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.
No. S-4296.
Supreme Court of Alaska.
July 31, 1992.
*108 David V. George, Juneau, and W.G. Ruddy, Ruddy, Bradley & Kolkhorst, Juneau, for appellant.
Gregory W. Lessmeier and Michael L. Lessmeier, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellee.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
MOORE, Justice.
Jerrie Beck was killed when the car she was driving left the roadway along a stretch of road from which state highway crews had been removing landslide debris over the previous ten days. Acting both individually and as the personal representative of Jerrie's estate, her mother, Ida Marie Beck, sued the State. After trial and a jury verdict for the State, Beck appeals.

I. FACTS AND PROCEEDINGS
On the evening of October 24, 1986, seventeen-year-old Jerrie Beck drove along the Mitkof Highway near Petersburg with four passengers. Near mile 6.2, her car left the roadway. Jerrie and one passenger were killed. A short time before the accident, the youths had obtained several bottles of wine coolers. Jerrie had consumed some of the wine cooler beverage in the minutes before the accident.
Ten days before the accident, landslides had covered the roadway near mile 6.2 of the Mitkof Highway. Following the landslide, crews from the Alaska State Department of Transportation and Public Facilities (DOTPF) erected signs, flashing lights and barricades at the site of the slide, and proceeded to clear slide material from the roadway over the next several days. Early on the day of the accident, DOTPF crews "finished up" the slide cleanup and removed the signs and barricades, but planned to give the area a final sweeping the following day with a mechanical broom. A DOTPF maintenance supervisor testified he knew that the work completed on October 24 left a "thin film" of debris which would have been redistributed by traffic to partially cover the lines on the roadway.
Ida Marie Beck sued the State of Alaska and DOTPF (collectively, "State") both in her personal capacity and as a representative of Jerrie's estate. The complaint alleged negligent maintenance, repair, design and failure to adequately warn of the dangerous condition of the roadway, and included claims for the decedent's suffering, wrongful death, and negligent infliction of emotional distress. On the State's motion for partial summary judgment, the trial court dismissed Beck's emotional distress claim and declared Jerrie Beck negligent per se for violating 13 Alaska Administrative Code 02.545(a), which prohibits the consumption of alcoholic beverages while driving.
Beck's theory at trial was that the rain-soaked slide debris on the roadway contributed to the accident by obscuring the centerline and foglines, thus depriving Jerrie Beck of guidance. Beck also sought to prove that the slide debris caused Jerrie to lose control of the vehicle. The State attributed the accident to Jerrie Beck's execution of a "sharp overcorrection" to the left after she steered the vehicle too far to the right. The jury, by special verdict, found for the State, concluding that the roadway was not in a dangerous condition *109 at the time of the accident. Judgment was subsequently entered for the State.
Beck appeals, citing a variety of errors, including the denial of her challenge for cause of a juror, the admission of accident reconstruction evidence, certain jury instructions, the dismissal of her negligent infliction of emotional distress claim, and the trial court's rulings on issues relating to the correct measure of damages in wrongful death actions.

II. DISCUSSION

A. Negligent Infliction of Emotional Distress
Beck claims that the trial court erred in granting the State's summary judgment motion dismissing her claim for negligent infliction of emotional distress (NIED). We agree.
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56. A resolution of the question of whether a plaintiff can assert a claim for NIED is essentially an inquiry into whether the defendant should reasonably foresee the injury to the plaintiff and thus owes the plaintiff a duty of care. See Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968). The existence and extent of a duty of care are questions of law for the court to determine. Estate of Breitenfeld v. Air-Tek, Inc., 755 P.2d 1099, 1102 (Alaska 1988); Armstrong v. United States, 756 F.2d 1407, 1409 (9th Cir.1985).
In Tommy's Elbow Room, Inc. v. Kavorkian, 727 P.2d 1038 (Alaska 1986), we adopted the guidelines set forth by the California Supreme Court in Dillon v. Legg for determining whether the injury to a plaintiff asserting a NIED claim was "foreseeable" to the defendant, thus establishing a duty of care:
(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
727 P.2d at 1041 (citing Dillon, 69 Cal. Rptr. at 80, 441 P.2d at 920). In Kavorkian and subsequent cases we rejected the "rigid requirement of sensory and contemporaneous observance of the accident" and instead focused on "the reasonable foreseeability that the plaintiff-witness would suffer emotional harm." Id. at 1043; Mattingly v. Sheldon Jackson College, 743 P.2d 356, 365 (Alaska 1987); Croft v. Wicker, 737 P.2d 789, 791-92 (Alaska 1987). In spite of our liberal interpretation of the Dillon guidelines, "there remains a requirement that the shock result more or less contemporaneously with the plaintiff's learning of the nature of the victim's injury." Mattingly, 743 P.2d at 365-66.
The facts of the present case are intermediate between Kavorkian and Mattingly.[1] Here, Beck was at her home in Petersburg, approximately six miles from the accident scene, when she learned of the accident from friends. She and her friends immediately drove to the accident scene, where rescue workers prevented them from approaching the wrecked vehicle which still contained her injured daughter. Beck and her friends then drove to the hospital. Within minutes of their arrival, Jerrie was brought into the hospital on a *110 gurney and Beck saw her injured daughter for the first time.
In both Kavorkian and Mattingly, we cited with approval Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 413 N.E.2d 690 (1980), in which the Massachusetts Supreme Judicial Court allowed a mother and her children to recover for emotional distress resulting from the sight of their seriously injured husband-father in a hospital after a work-related accident. 727 P.2d at 1042 n. 4; 743 P.2d at 365. In Ferriter, the court stated that
[a] plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable.
413 N.E.2d at 697. Where, as here, the plaintiff experiences shock as the result of a sudden sensory observation of a loved one's serious injuries during an uninterrupted flow of events following "closely on the heels of the accident," such emotional injury is foreseeable and the plaintiff is entitled to assert a claim for NIED. See also Masaki v. General Motors Corp., 71 Haw. 1, 780 P.2d 566 (1989) (though not present at the accident scene, parents of a 28 year old mechanic, whose neck was broken when a car inexplicably lurched backward, were allowed to recover for NIED because they lived on the same island, witnessed the consequences of the accident, and went immediately to the hospital on learning of the accident and were told their son would never walk).
The State urges us to restrict NIED claims by applying the Dillon factors as strict requirements rather than guidelines, the approach taken by the California Supreme Court in Thing v. La Chusa, 48 Cal.3d 644, 257 Cal. Rptr. 865, 771 P.2d 814 (1989).[2] We decline to adopt the Thing approach. Rather, we believe that courts "should apply the concepts of foreseeability and duty to negligent infliction of emotional distress actions, with a view toward a policy favoring reasonable limitations on liability." 257 Cal. Rptr. at 895, 771 P.2d at 844 (Broussard, J., dissenting).
We believe that both justice and the policy favoring reasonable limitations on liability can be served with a less restrictive approach than that taken by the Thing court. In Thing, the majority distinguished between the emotional distress which results from the observation of the injury-producing event and that which results from learning of the injury or death, or observing the pain and suffering, but not the cause of the injury. 257 Cal. Rptr. at 879, 771 P.2d at 828. While recognizing the arbitrary nature of this distinction, the court reasoned that the law should provide a remedy for the former, but not the latter. Id. We believe, however, that one who is thrust, either voluntarily or involuntarily, into such dramatic events and who makes a sudden sensory observation of the traumatic injuries of a close relative in the immediate aftermath of the event which produced them is no less entitled to assert a claim for his or her emotional injuries than one who actually witnessed the event. By contrast, one who learns of the injury or death of a loved one, or who observes the pain and suffering or the injuries only after a considerable period of time has elapsed since *111 the accident, suffers a harm which, while foreseeable, policy and reason dictate the law should not regard as compensable.
Because Beck's emotional shock resulted from her observation of her daughter's traumatic injuries during the continuous flow of events in the immediate aftermath of the accident, and because it cannot be said that she had time to "steel herself" as did the plaintiff in Mattingly, we conclude that her injury was foreseeable. Thus we conclude that the trial court erred in dismissing Beck's NIED claim on the State's motion for summary judgment.

B. Challenge for Cause of Juror Baker
Beck also contends the trial court erred when it denied her challenge for cause of juror Sandra Baker. Beck argues that Baker had personal knowledge of the facts of the case, that statements by Baker revealed preconceived opinions about the case, and that Baker failed to exhibit a willingness to set aside her opinions and be guided solely by the evidence and the trial court's instructions. The State argues that Baker's responses on voir dire indicated a willingness to follow the trial court's instructions.
Alaska Civil Rule 47(c) allows a party to challenge prospective jurors for cause and gives the trial court the discretion to determine whether to grant or deny such challenges.[3] We will only interfere with the sound discretion of the trial court to determine challenges of jurors for cause "in exceptional circumstances and to prevent a miscarriage of justice." Sirotiak v. H.C. Price Co., 758 P.2d 1271, 1275 (Alaska 1988) (quoting Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964)). In Sirotiak, we declared that the record need not "reflect `unequivocal and absolute' impartiality" of prospective jurors, but "[a]ll that is required of a prospective juror is a good faith statement that he or she will be fair, impartial, and follow instructions." 758 P.2d at 1277. As we noted in Sirotiak, "we doubt the truly honest juror could state unequivocally and absolutely that his or her biases will have no effect on the verdict." The Sirotiak requirement, while no absolute guarantee of impartiality and fairness, is the best assurance available that a prospective juror who exhibits bias or preconceived opinions is willing to make an honest and sincere effort to set them aside to the extent possible in the performance of his or her duty.
The record reveals that the minimal standard of Sirotiak was not met here. Baker testified that she had personal knowledge of the facts of the case and that she had formed an opinion as to "what happened out there." On voir dire, Baker admitted that she had visited the scene several days after the accident and had formed the opinion that the accident resulted from "inattention to the road" by an "[i]nexperienced driver" and that she did not "think there was any fault." When asked by counsel for the State whether she could set her opinions aside and decide the case based on the evidence and the court's instructions, Baker replied "I don't think I would change my mind... . I don't see how the court could instruct me without the court itself showing me that someone was to blame." Her response to the question a second time was "I don't think I would be willing to reward or punish anyone for the accident." When asked if she would be able to apply the court's definition of negligence to the evidence, Baker replied "Maybe." Further questioning by the court failed to elicit a *112 response approximating the good faith statement of fairness and impartiality required by Sirotiak.[4] The court ultimately denied Beck's challenge to Baker based on her ability to understand, rather than her willingness to follow, the court's instructions.[5] Because Baker did not state in good faith that she would be fair, impartial and follow the court's instructions, and because she exhibited a substantial inclination to be governed by her own opinions rather than the evidence and the court's instructions, the trial court abused its discretion in failing to excuse Baker. See Blades v. DaFoe, 704 P.2d 317, 324-25 (Colo. 1985) (when, based on a juror's statements during voir dire as a whole, there is reason to believe a prospective juror is not indifferent, the juror must be dismissed for cause).
The State argues that if the denial of the challenge for cause was error, it was harmless because "[n]o prejudice flowed from the denial of the challenge." In support of its argument, the State cites Dalkovski v. Glad, 774 P.2d 202 (Alaska 1989), where we held that, although refusal to excuse a potential juror with personal knowledge of the facts of a case was an abuse of discretion, the error was harmless because the juror's knowledge was unrelated to and did not substantially affect the particular findings made by the jury which defeated plaintiff's claim. Id. at 206-07. In the present case, however, the facts of which juror Baker had personal knowledge, i.e., the condition of the roadway, were the pivotal factual issues in the case.[6] Thus the State's reliance on Dalkovski is misplaced.
In Dalkovski, we stated that "[a] juror with any material knowledge of the facts in the case on trial should be excused for cause unless it is beyond question that such juror can try the case and return a verdict only on the evidence introduced in the courtroom." 774 P.2d at 206 (quoting Jordan, Jury Selection § 5.15 at 83 (1980)). Here, the combination of Baker's preconceived opinions and personal knowledge of the facts of the case, as well as her reluctance to set aside these opinions and base a decision on the evidence and the court's instructions, are sufficient to cast considerable doubt on whether Beck secured a fair and competent jury. Because it cannot be said that the error did not substantially affect the jury's verdict for the defendant, it was not harmless. Therefore, judgment for the State must be reversed.

C. Admission of Experimental Evidence
As a basis to challenge Beck's theory as to the cause of the accident, the State conducted an experiment in which slide material was scooped from the side of the road at the accident site, spread over the roadway, and scraped and swept as had been done on the day of the accident. Terry Day, an accident reconstructionist, test-drove a vehicle similar to the one involved in the accident through the area. Day conducted skid tests and measured road friction with an on-board performance computer. He also tested Beck's theory that the material on the roadway caused the vehicle to pull to the right. Photographs were taken from the vehicle at rest at various positions along the roadway to show visual *113 clues which would be available to guide a driver along the roadway under conditions similar to those which existed at the time of the accident. The trial court admitted the testimony and photographs over Beck's objection that the conditions of the experiment were not substantially similar to those existing at the time of the accident. Beck reasserts this challenge on appeal.
Experimental evidence is admissible only if the conditions of the experiment were substantially similar to the conditions at the time of the event in issue. Love v. State, 457 P.2d 622, 627 (Alaska 1969). In Love, we outlined several principles to guide the court in determining substantial similarity. These include: 1) whether the dissimilarities are likely to distort the results of the experiment to the degree that the evidence is not relevant; 2) whether the dissimilarities can be adjusted for or explained so that their effect on the results can be understood by the jury; 3) the purpose of the experiment and the degree to which the matter under experiment is a subject of precise science; and 4) whether the experiment would be considered valid by persons skilled or knowledgeable in the field which the experiment concerns. 457 P.2d at 628. As with all evidence, experimental evidence is also subject to exclusion at the trial court's discretion if its prejudicial effect outweighs its probative value. 457 P.2d at 627; Alaska R.Evid. 403.
We conclude that the trial court correctly applied the Love standards and that the evidence supports its finding that the conditions under which Day conducted the skid and pull tests were substantially similar to those at the time of the accident. Tests showed that the material spread on the roadway for the experiment was the same as the material on the road at the time of the accident. The same equipment was used to clear the roadway on both occasions. The weather and moisture conditions were the same or similar. The vehicles used in the experiment were similar to the vehicle involved in the accident. The dissimilarities cited by Beck were individually considered by Day, who was able to adequately and clearly explain their significance or lack thereof in evaluating the test results.
As we stated in Love, "[t]he rule of substantial similarity of conditions does not require an identity of conditions but only that degree of similarity which will insure that the results of the experiment are probative." 457 P.2d at 627. Here, the conditions were sufficiently similar that the results of the friction and pull tests clearly had probative value and relevancy given Beck's theory of the cause of the accident. When, as here, a party makes a satisfactory showing of substantial similarity of the experimental conditions, an opposing party is free to conduct cross examination, to present evidence, and to make arguments challenging the significance, accuracy and results of the tests. However, such evidence would go to the weight rather than to the admissibility of the experimental evidence.
Beck further challenges the admission of the photographs from the recreation by arguing that their prejudicial value outweighs their probative value and that the trial court should have exercised its discretion under Alaska Rule of Evidence 403 to exclude the photographs. We disagree. The trial court did not abuse its discretion in concluding that the probative value on the issue of visual guidance outweighed the prejudicial value and that the evidence could be adequately explained to, and understood by, the jury. The court, at Beck's request, gave a cautionary instruction that these were not photographs of the scene at the time of the accident and that "extreme caution must be used ... in evaluating these photos."
Beck argues for a strict rule of law which would prohibit the admission of still photos to represent what the human eye can see in dynamic situations. We decline to adopt such a rule. We are aware of only one case in which a court concluded that photographic evidence to depict what could be seen by the human eye was improperly admitted, but the error was held to be nonprejudicial. See Allemand v. Zip's Trucking Co., 552 So.2d 1023, 1029 (La. App. 1989). Other cases hold that subsequent *114 photographic evidence of reconstructed events is admissible as long as a proper foundation is laid and any discrepancies between the reconstruction and the original event are explained. See Sinai v. Polinger Co., 498 A.2d 520 (D.C.App. 1985); Kaps Transport, Inc. v. Henry, 572 P.2d 72, 75 (Alaska 1977); Zolber v. Winters, 109 Idaho 824, 712 P.2d 525 (1985); Hritz v. Slawin, 706 S.W.2d 296 (Mo. App. 1986). The trial court here initially doubted the sufficiency of the foundation for the admission of the photographs. It admitted the photographs only after extensive voir dire testimony explaining the discrepancies between the reconstruction and the scene at the time of the accident and on the usefulness of still photos for showing what a driver might see from a moving vehicle. We conclude that the court properly admitted the photographs.

D. Jury Instructions
Beck challenges several of the court's instructions to the jury. Because jury instructions involve questions of law, we apply our independent judgment. Kile v. Belisle, 759 P.2d 1292, 1297 n. 15 (Alaska 1988). An erroneous statement of law will not constitute reversible error unless it prejudiced one of the parties. Grimes v. Haslett, 641 P.2d 813, 818 (Alaska 1982). An erroneous instruction is prejudicial if it can be said that the verdict may have been different had the erroneous instruction not been given. Hazen v. Municipality of Anchorage, 718 P.2d 456, 462 (Alaska 1986).

1. Instruction 19
Beck argues Instruction 19 was erroneous because it failed to instruct on her negligent failure to warn theory, because it included a foreseeability element, and because it imposed elements of actual or constructive notice.[7]
Instruction 19 is specifically based on the jury instruction which we proposed in Johnson v. State, 636 P.2d 47, 56 n. 14 (Alaska 1981), defining the standard for measuring the liability of a public entity for a dangerous condition of public property. As such, it accurately reflects the law. This instruction, coupled with instruction 23 defining negligence, cannot be considered objectionable for the reasons argued by Beck. However, on remand, we see no reason for excluding an instruction reflecting the inclusion of a duty to warn the traveling public of dangerous conditions as a component of a state's duty to exercise reasonable care in maintaining highways if such an instruction is warranted by the evidence and requested by Beck. See State v. Abbott, 498 P.2d 712, 726 (Alaska 1972) (quoting comment b to § 349 of the Restatement (Second) of Torts that the duty to maintain safe highways includes the duty to warn the traveling public of conditions which endanger travel).

2. Instruction 20
Beck argues that Instruction 20 was erroneous because it limits the extent of the State's duty.[8] However, as we stated in State v. I'Anson, 529 P.2d 188, 195 (Alaska 1974), "the appropriate standard of care required of [the State] and its agents was to use reasonable care to keep the highway in a safe condition for the reasonably prudent traveler." Since Instruction 20 merely restates this duty, substituting "careful" for "prudent," it states the appropriate *115 standard and does not constitute error.

3. Instruction 27
Beck argues that the concepts of actual and constructive notice included in Instruction 27 are "irrelevant and an improper consideration to be thrust on the jury."[9] While this would be true when the plaintiff's sole theory is that the dangerous condition was created by the State's own negligence, notice would become relevant if the State did not create the condition. See Johnson v. State, 636 P.2d 47, 52-53 (Alaska 1981) (in negligence action against the State for a defective road condition, plaintiff must establish the State's actual or constructive notice of the dangerous condition unless the State caused the condition). This alternative was spelled out to the jury in Instruction 19, discussed supra. Because Beck's theory of the case was in part predicated on allegations of the State's failure to adequately warn of the dangerous conditions created by the landslide, these instructions were appropriate.

4. Instruction 35
Beck argues that the court erred by giving Instruction 35, which instructs the jury to find Jerrie Beck comparatively negligent if they find she violated Alaska's headlight law. 13 AAC 04.020(e).
Comparative negligence instructions should not be given unless sufficient evidence is presented from which a reasonable person could infer that plaintiff was contributorily negligent. Sebring v. Colver, 649 P.2d 932, 935 (Alaska 1982). Here, the State concedes in its brief on appeal that "there was no evidence available on whether or not Jerrie Beck was using her bright headlights... ." (Emphasis added). Thus it was error to give the instruction. On remand, such an instruction should not be given unless the evidence at trial supports a reasonable inference that Beck violated the headlight law.

5. Instruction 31
Before trial, the court granted the State's motion for summary judgment on the issue of negligence per se based on violation of 13 AAC 02.545(a).[10] At trial, the court submitted the underlying factual issue to the jury in instruction 31.[11] Beck now challenges both the grant of summary judgment and the jury instruction on this issue.
In Ferrell v. Baxter, 484 P.2d 250, 263-65 (Alaska 1971), we adopted the doctrine of negligence per se as set forth in the Restatement (Second) of Torts §§ 286, 288A and 288B (1965). In determining whether to give a negligence per se instruction, the trial court must first "determine whether the conduct at issue lies within the ambit of the statute or regulation in question, by applying the four criteria set out in the Restatement (Second) of Torts § 286 (1965)." State Mechanical, Inc. v. Liquid Air, Inc., 665 P.2d 15, 18 (Alaska 1983) (footnote omitted). In reviewing this determination, which is strictly a legal conclusion, this court will exercise its independent judgment. Harned v. Dura Corp., 665 P.2d 5, 12 (Alaska 1983). If the trial court *116 concludes that the statute is applicable, the court has the limited discretion to refuse to give the negligence per se instruction only if it determines that "the rule of law is so obscure, unknown, outdated, or arbitrary as to make inequitable its adoption as a standard of reasonable care." 665 P.2d at 19. Such a determination will only be reversed on appeal if it constitutes an abuse of discretion. Id.
Here, 13 AAC 02.545(a) meets the criteria of § 286 of the Restatement (Second) of Torts. Its purpose, exclusively or in part, is to protect the public against personal injury and property damage caused by those who drive while drinking intoxicating beverages. Beck's argument that the appropriateness of the negligence per se instruction depends on whether the regulation's purpose is to prevent driver distraction and inattentiveness or to prevent drivers from becoming impaired is without merit. Neither the grant of summary judgment nor the instruction constitute objectionable error.

E. Wrongful Death Damages
Before trial, the superior court decided in favor of the State on several issues presented on motions of both parties.[12] Beck challenges the superior court's resolution of these issues, which involve the appropriate measure of damages in a wrongful death action. Because these issues involve questions of law, we will use our independent judgment in reviewing the superior court's ruling. Jones v. Jennings, 788 P.2d 732, 735 (Alaska 1990).
First, Beck argues that damages for loss to the estate in this case should be calculated by assuming the decedent would have been a member of the most statistically probable household size, which Beck's expert witness determined to include 2.6 persons.
Under AS 09.55.580(a), recovery in wrongful death cases where the decedent is not survived by a spouse or dependents is limited to pecuniary loss, which we have defined as "the probable value of the deceased's estate had he not prematurely expired less the actual value of the estate at death." Portwood v. Copper Valley Elec. Ass'n, 785 P.2d 541, 542 (Alaska 1990) (citing Osborne v. Russell, 669 P.2d 550, 560 (Alaska 1983)). In Osborne, we held that loss to the estate in a case where the decedent left no dependents is measured by the decedent's probable future earnings, less the amount he would have spent on living expenses assuming "an absence of dependents throughout the deceased's life expectancy." 669 P.2d at 560. We further stated that "the possibility that the deceased would later have acquired dependents toward whom he would have expended sums has been ruled by this court to be too speculative a matter for a jury to consider." Id. (citing In re Pushruk, 562 P.2d 329, 332 (Alaska 1977)). See generally Millard F. Ingraham, Damages for Wrongful Death in Alaska, 5 Alaska L.Rev. 293 (1988) (urging interpretation of wrongful death statute which accords with purpose of tort law to compensate victims for harms actually suffered). We believe Osborne is dispositive and that the trial court correctly ruled for the State on this issue.
Secondly, Beck argues that AS 09.17.040(a)-(b), which requires the reduction to present value of future economic damages "[i]n every case where damages for personal injury are awarded," (emphasis added), does not mandate reduction to present value in wrongful death cases. Relying on the maxim of statutory construction, expressio unius est exclusio alterius, Beck argues that, as the phrase is used in the statute, "personal injury" does not encompass death.
Until now, we have not had occasion to interpret AS 09.17.040.[13] Interpretation *117 of a statute begins with an examination of its language construed in light of its purpose. Vail v. Coffman Engineers, Inc., 778 P.2d 211 (Alaska 1989). Statements made by a bill's sponsor during legislative deliberations are relevant evidence when the court is trying to determine legislative intent. Madison v. Alaska Dep't of Fish and Game, 696 P.2d 168, 176 (Alaska 1985). The court's task here has been summed up in the following way:
[T]he difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the Legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.
John Chipman Gray, The Nature and Sources of the Law, 173 (2d ed. 1972).
The provisions at issue here were passed as part of a tort reform measure. See Ch. 139, SLA 1986. The bill was a response to a liability insurance "crisis" and was intended to increase the availability and affordability of liability insurance. Tapes of Floor Debate in Alaska Senate, May 5, 1986.[14] The amendment leading to AS 09.17.040 was introduced by Representative Pettyjohn on the floor of the House on May 8, 1986. 1986 House Journal 3232. Representative Pettyjohn's remarks on the floor indicate that the clear purpose of the provision was to bring Alaska in line with other states which reduce future economic awards to present value[15] and to reverse the rule we established that the trier of fact should be allowed to compute loss of future earnings without reduction to present value.[16] Tapes of Floor Debate in Alaska House of Representatives, May 8, 1986. Our review of the legislative history suggests that the legislature did not anticipate the argument Beck makes here. Nonetheless, the clear legislative purpose requires us to interpret AS 09.17.040(b) to require the reduction to present value of future economic damages in wrongful death cases in the absence of an agreement of the parties to do otherwise.[17] Where, as here, the legislative purpose can be ascertained with reasonable certainty, the maxims of construction relied on by Beck are secondary to the rule that a statute should be construed in light of its purpose. See Chevron U.S.A., Inc. v. LeResche, 663 P.2d 923, 931 (Alaska 1983). Thus we reject Beck's statutory construction arguments.[18]

IV. CONCLUSION
In summary, we conclude that the trial court erred in dismissing Beck's NIED claim on summary judgment. Further, we conclude that the trial court's abuse of discretion in denying Beck's challenge for cause of juror Baker constitutes reversible error.
REVERSED AND REMANDED.
NOTES
[1] In Kavorkian, we permitted a plaintiff to assert a claim for NIED after he had rushed to the scene of his daughter's fatal automobile accident and watched as rescuers removed his daughter from the wreckage. 727 P.2d at 1040-43. In Mattingly, the plaintiff was in Ketchikan when he learned of the accident which occurred in Sitka. 743 P.2d at 365-66. In denying recovery to the plaintiff in Mattingly, we noted that he was a considerable distance from the accident scene, that the shock of observing the injured accident victims did not follow "closely on the heels of the accident," and that he "had time to steel himself" during the 150 mile flight from Ketchikan to Sitka. Id.
[2] In Thing, the California Supreme Court upheld summary judgment dismissing the NIED claim of a mother who, after learning that her son had been struck by a car, rushed to the scene to observe him, bloodied and unconscious, lying in the street. Noting that Dillon has led to uncertainty and "ever widening circles of liability," 257 Cal. Rptr. at 870, 771 P.2d at 819, the Thing court rejected the strict foreseeability analysis of Dillon and adopted a "bright-line" test. 257 Cal. Rptr. at 878-81, 771 P.2d at 827-30. It held that a plaintiff may recover for NIED if, and only if, the plaintiff:

(1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress  a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.
Id., 257 Cal. Rptr. at 800-81, 771 P.2d at 829-30 (footnotes omitted).
[3] Alaska Civil Rule 47(c) reads in pertinent part:

Challenges for Cause. After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined by the court. The following are grounds for challenge for cause:
... .
(2) That the person is biased for or against a party or attorney.
(3) That the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.
(4) That the person has opinions or conscientious scruples which would improperly influence his verdict.
[4] The trial court's questioning of Baker seemed tailored to rehabilitate her as a qualified juror rather than to ascertain her willingness to perform her duty as a juror in a fair and impartial manner. While we recognize the difficulties in impaneling a jury and are reluctant to intrude on the trial court's discretion in this area, we have serious doubts about the appropriateness of the trial court's rehabilitation efforts, particularly when other prospective jurors remain on the panel, as was the case here.
[5] In denying Beck's challenge for cause, the trial court stated "I think she is capable of understanding the court's instructions and understanding the concepts of negligence and concepts of legal fault. And therefore, I think she can serve."
[6] On the special verdict form, the only question the jury answered was whether it was "more likely than not that the road was in a dangerous condition at the time of the accident," to which the jury answered "No." While Baker's visit to the scene occurred several days after the accident and after the State had performed a final sweeping of the roadway, we cannot say that her knowledge of the facts of the case was immaterial, particularly in light of the opinions which it engendered.
[7] Instruction 19 reads:

To be entitled to recover money damages from the State of Alaska, the estate of Jerrie Beck must prove that it is more likely true than not true that:
1. The Mitkof Highway at the time of the crash was in a dangerous condition;
2. The dangerous condition was a legal cause of the crash;
3. The crash occurred in a way that was reasonably foreseeable as a consequence of the dangerous condition of the highway; and
4. Either
a. the state was negligent in its maintenance of the highway, or
b. the state had actual or constructive notice of the dangerous condition and a reasonable amount of time to correct the dangerous condition prior to the crash.
[8] Instruction 20 reads:

The roadway was in a dangerous condition if it was not in a reasonably safe condition for the reasonably careful driver.
[9] Instruction 27 reads:

The State had actual notice of the alleged dangerous condition if an officer or an employee of the Department of Transportation and Public Facilities had notice or actual knowledge of the existence of the condition and knew or should have known of its dangerous condition.
The State had constructive notice of the alleged dangerous condition if the condition had existed for such a period of time before the accident in question and was of such an obvious nature that the State, in the exercise of reasonable care, should have discovered the alleged condition and its dangerous character.
[10] 13 AAC 02.545(a) provides:

No person may drink an intoxicating beverage while driving a vehicle.
[11] Instruction 31 reads:

You are instructed that if Jerrie Beck was drinking an intoxicating beverage while driving at the time in question, she was negligent as a matter of law and you must so find. You must still determine whether Jerrie Beck's actions of drinking an intoxicating beverage while driving, if proved, were a legal cause of the accident.
[12] The State sought a protective order to preclude the testimony of Beck's expert witness, economist Eric McDowell, on issues relating to damages. Beck moved to determine the law of the case on related issues.
[13] In Kulawik v. ERA Jet Alaska, 820 P.2d 627 (Alaska 1991), we were asked to consider the propriety of a damages award in a wrongful death case. Because the cause of action in that case accrued before the effective date of AS 09.17.040, we were not called upon to interpret that statute. 820 P.2d at 629 n. 2.
[14] See also files of House Judiciary Committee (microfiche # 3417-31), Senate Judiciary Committee (microfiche 4110-19), Senate Labor and Commerce Committee (microfiche 4191), and Senate Finance Committee (microfiche 2251-54). See also C.S.S.B. 377 (Jud), 14th Leg. 2nd Sess. (1986) (containing findings and purpose which were not included in final bill).
[15] For example, California law requires the reduction to present value of awards of future economic damages in wrongful death cases. See 6 B.E. Witkin, Summary of California Law, Torts § 1425 at 906, § 1428 at 908 (9th ed. 1988).
[16] In Beaulieu v. Elliott, 434 P.2d 665, 671 (Alaska 1967), we held that the trier of fact should be permitted to compute loss of future earnings without reduction to present value. We extended this rule to wrongful death cases in Leavitt v. Gillaspie, 443 P.2d 61, 69 (Alaska 1968).
[17] AS 09.17.040(c) allows the parties to agree to compute future economic damages without reduction to present value under the rule of Beaulieu v. Elliott, 434 P.2d 665 (Alaska 1967).
[18] We have considered the third issue raised by Beck regarding wrongful death damages and find Beck's arguments to be without merit.