Mitko DALKOVSKI, Appellant,

v.

Gail GLAD, d/b/a Glad Realty, and Gail Strickland, Appellees.

No. S–2600.

Supreme Court of Alaska.

May 12, 1989.

---

16. *See Hughes v. Nashua Mfg. Co.*, 257 Cal. App.2d 778, 65 Cal.Rptr. 380, 385 (1968); *Hoppin v. Long*, 74 Mont. 558, 241 P. 636, 644 (1925).

C. Michael Hough, Homer, for appellant.

Peter F. Mysing, Kenai, for appellees.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

## OPINION

MOORE, Justice.

The issue on appeal is whether a civil plaintiff was deprived of a fair trial because the superior court refused to excuse for cause a juror with personal knowledge of the facts of the case. We conclude that the court abused its discretion in refusing to excuse the juror. We affirm the jury verdict for the defendants, however, because the error did not affect the verdict.

## I. FACTS AND PROCEEDINGS

In 1978, Andrija Spiroski bought an undeveloped lot through Gail Strickland, an agent for Glad Realty. The lot was one of four undeveloped parcels for sale at one site.

According to Spiroski, Strickland took him to the site and identified the boundaries of lot 18 for him. However, Strickland denied representing the location of the boundaries and testified that she advised Spiroski to have the lot surveyed before he improved it. There was conflicting testi-

mony as to whether this visit took place before or after the sale closed.

In March 1978, Spiroski signed a contract to buy lot 18, and he received a deed in May 1978. In 1979, Spiroski sold the still-unimproved lot to Mitko Dalkovski.

Spiroski showed Dalkovski the same boundaries that he claimed Strickland showed him. Dalkovski purchased title insurance for his purchase of lot 18. The preliminary title report was available to Dalkovski on July 20, 1979. A plat map attached to the preliminary title report would have enabled Dalkovski to locate the exact boundaries of lot 18. The title company told Dalkovski not to improve the lot until he was sure of the boundaries.

Also on July 20, Dalkovski applied for a building permit from the City of Kenai. Howard Hackney, a building inspector, talked briefly with Dalkovski and raised the question of whether there might be some mix-up in the lots.

Dalkovski made several expensive improvements on lot 19 before closing the purchase of lot 18. He relied on Spiroski's representations and made no independent effort to verify the boundaries.

Dalkovski soon learned that he had made improvements on the wrong lot. In August 1982, he filed suit against Spiroski, Glad Realty and Gail Strickland. He claimed that each defendant had made affirmative misrepresentations as to the boundaries of his parcel. Dalkovski sought damages equal to the value of the improvements he made on lot 19.[1]

The case proceeded to trial. Howard Hackney, the Kenai building inspector, was selected for the jury. Among the factual questions were whether Strickland had intentionally misrepresented the boundaries of lot 18 and whether Dalkovski should have discovered the misrepresentation more than two years before he filed suit.

After the trial began, Hackney informed the court that he had some personal knowl-

---

**1.** Dalkovski dismissed the claim against Spiroski when Spiroski assigned him all his rights against Strickland and Glad Realty.

edge about the facts of the case based on his July 1979 conversation with Dalkovski. However, Hackney also indicated that he could serve as a fair and impartial juror. The court denied Dalkovski's motion to excuse Hackney and seat the alternate juror.

The jury returned a special verdict for Strickland and Glad Realty. Specifically, the jury found that (1) although Strickland misrepresented the boundaries of the parcel, she did not intend to induce Spiroski to rely on them, and (2) Dalkovski should have known about the misrepresentations no later than July 20, 1979. The court entered judgment in favor of Glad and Strickland because Dalkovski failed to prove an essential element of his misrepresentation claim,[2] and his claim was barred under the statute of limitations, AS 09.10.070.

Dalkovski appeals on the ground that he was deprived of a fair trial when the trial court refused to excuse Hackney from the jury.

**2.** *See Bevins v. Ballard,* 655 P.2d 757, 763 (Alaska 1982) (recognizing cause of action against real estate broker for innocent misrepresentation); Restatement (Second) of Torts § 552C(1) (1977) (innocent misrepresentation must be made "for the purpose of inducing the other to act or refrain from acting in reliance upon it.")

**3.** Rule 47(c) states:
*Challenges for Cause.* After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined by the court. The following are grounds for challenge for cause:
(1) That the person is not qualified by law to be a juror.
(2) That the person is biased for or against a party or attorney.
(3) That the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.
(4) That the person has opinions or conscientious scruples which would improperly influence his verdict.
(5) That the person has been subpoenaed as a witness in the case.
(6) That the person has already sat upon a trial of the same issue.

## II. THE SUPERIOR COURT HAS DISCRETION TO EXCUSE A JUROR WITH SOME PERSONAL KNOWLEDGE OF THE FACTS OF THE CASE

Whether a juror's personal knowledge of facts of a case gives rise to a challenge for cause is a question of law to which we may apply our independent judgment. *Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988).

Alaska Rule of Civil Procedure 47(c) lists the grounds for which a juror may be challenged for cause; juror knowledge of the facts of the case is not expressly listed.[3] However,

[s]tatutes which enumerate certain causes as disqualifying a prospective juror are not exclusive of other causes which may imply disqualifying bias or prejudice of the prospective juror, and such statutes do not deprive courts of their inherent right to declare that such other causes also require dismissal of a

(7) That the person has served as a grand or petit juror in a criminal case based on the same transaction.
(8) That the person was called as a juror and excused either for cause or peremptorily on a previous trial of the same action, or in another action by the same parties for the same cause of action.
(9) That the person is related within the fourth degree (civil law) of consanguinity or affinity to one of the parties or attorneys.
(10) That the person is the guardian, ward, landlord, tenant, employer, employee, partner, client, principal, agent, debtor, creditor, or member of the family of a party or attorney; provided, however, that challenge for cause may not be taken because of the employer-employee relationship when the State of Alaska or a municipal corporation is the employer and the person challenged is not employed by an agency, department, division, commission, or other unit of the State or municipal corporation which is directly involved in the case to be tried.
(11) That the person is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or been accused by him in a criminal prosecution.
(12) That the person has a financial interest other than that of a taxpayer in the outcome of the case.
(13) That the person was a member of the grand jury returning an indictment in the case.

prospective juror in order to ensure that litigants will have a fair and impartial trial.

*Redwine v. Fitzhugh*, 78 Wyo. 407, 329 P.2d 257, 260, *reh'g denied*, 78 Wyo. 407, 330 P.2d 112 (1958). *See also* Am.Jur.2d *Jury* § 266 (1969).

The grounds listed in Rule 47(c)(2), (3), and (4), which approximate juror personal knowledge of facts of the case, involve value judgments by the trial court and are committed to the court's discretion. *Malvo v. J.C. Penney Co., Inc.*, 512 P.2d 575, 578 (Alaska 1973).

Many courts have held that a challenge for cause may arise from personal knowledge of facts of the case on the part of a juror in a civil case. The critical inquiry is whether the knowledge is such as would prevent the juror from being impartial and from rendering a verdict only on the evidence introduced at trial. The determination of the juror's ability to be impartial is committed to the trial court's discretion, and the juror's stated belief in his/her ability to render a fair verdict is not dispositive. *Wells v. Autry*, 235 So.2d 706 (Miss.1970); *Cook v. Kansas City*, 358 Mo. 296, 214 S.W.2d 430 (1948); *Kunk v. Howell*, 40 Tenn.App. 183, 289 S.W.2d 874 (1956); Annotation, *Juror's Previous Knowledge of Facts of Civil Case as Disqualification*, 73 A.L.R.2d 1312 (1960); 47 Am.Jur.2d *Jury* § 276 (1969).

■ We hold that a juror's personal knowledge of facts of the case gives rise to a challenge for cause committed to the trial court's discretion. In the instant case, Judge Cranston treated Hackney's personal knowledge as grounds for a challenge for cause, but he exercised his discretion to retain Hackney on the jury. Upon learning of Hackney's knowledge, Judge Cranston questioned Hackney and allowed the two attorneys to question him as to the effect the knowledge would have on his ability to be fair and impartial. Judge Cranston heard argument from counsel at that time and reserved judgment until the end of trial on whether to excuse Hackney. At the end of trial, Judge Cranston ruled that

nothing had given rise to an "actionable challenge for cause," so he retained Hackney on the jury. Judge Cranston applied the proper rule of law.

### III. THE SUPERIOR COURT ABUSED ITS DISCRETION BY REFUSING TO EXCUSE HACKNEY FOR CAUSE

■ The question thus presented is whether the decision to retain Hackney was an abuse of discretion. The trial court's decision will be reversed "only in exceptional circumstances and to prevent a miscarriage of justice." *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964). *See also Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1275 (Alaska 1988). Dalkovski argues that Hackney's knowledge of Dalkovski's July 1979 statement about the mix-up in the lots was prejudicial, and the refusal to excuse Hackney was thus an abuse of discretion. We agree.

The critical inquiry is whether the knowledge of the facts prevents the juror from rendering an impartial verdict based solely on the evidence presented at trial. "Knowledge by a juror of incidental or collateral facts ... will not render him incompetent to sit in the trial of a case." *Wells*, 235 So.2d at 708.

In *Sirotiak*, 758 P.2d at 1277, we held that a potential juror who expressed a bias against large damage awards may sit on a jury if the juror makes "a good faith statement that he or she will be fair, impartial and follow instructions." When questioned by the court and the two attorneys, Hackney indicated that he could serve fairly and impartially and that his personal knowledge would not influence his verdict. Hackney's statement satisfied the *Sirotiak* test.

However, *Sirotiak* does not control here. A juror's personal knowledge of facts is a different matter than a juror's bias or prejudice. A juror with personal knowledge may base his or her verdict on facts not in evidence and may improperly divulge these

facts to other jurors.[4]  Other jurors are less likely to be swayed by one juror's bias or prejudice than by that juror's statement of fact.  The juror with personal knowledge therefore presents a greater threat to the litigants' right to a fair trial.

We conclude that a higher standard prevails for retaining jurors with personal knowledge of facts of the case.

> [T]he judge should always look closely into the matter.  A juror with any material knowledge of the facts in the case on trial should be excused for cause unless it is beyond question that such juror can try the case and return a verdict only on the evidence introduced in the courtroom.

Jordan, *Jury Selection* § 5.15 at 83 (1980).  The primary goal is "to secure a fair and competent jury, and nothing should be permitted to exist that might throw the least doubt upon that fact."  *Wells*, 235 So.2d at 711.

Spiroski originally purchased the lot in May of 1978.  The misrepresentation of the boundaries occurred on or before May 8, 1978.  Dalkovski purchased the lot from Spiroski on August 13, 1979 and filed suit on August 12, 1982.  The applicable statute of limitations is two years.  AS 09.10.070.  The statute of limitations "does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action."  *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987).  Dalkovski's claim is thus time barred unless he did not know of and reasonably failed to discover the misrepresentation until August 13, 1980.

Hackney's knowledge that Dalkovski was aware of a mix-up on July 20, 1979 was thus very prejudicial to Dalkovski.  This was not an incidental or collateral fact, but one that would defeat Dalkovski's claim completely.  Given the importance of an impartial jury and the availability of an alternate juror, we conclude that it was an abuse of discretion for Judge Cranston to retain Hackney as a juror.

## IV.  BECAUSE DALKOVSKI WAS NOT PREJUDICED BY HACKNEY'S PRESENCE ON THE JURY, HE IS NOT ENTITLED TO A NEW TRIAL

Dalkovski is entitled to a new trial only if he was prejudiced by the court's failure to excuse Hackney.  Dalkovski argues that he was deprived of a fair and impartial jury since Hackney's personal knowledge prevented him from being impartial on the critical question of when Dalkovski should have discovered the boundary mistake.  Glad argues that the error was harmless for two reasons.  First, the jury could have found that Dalkovski should have known of the error by July 20, 1979, because the preliminary title report, with its accurate plat map, was first available on that day.  Second, the jury found that the misrepresentation was not made for the purpose of inducing Spiroski's reliance on it.  Since Dalkovski failed to prove an essential element of a claim for innocent misrepresentation, Glad contends that the error was harmless.

The leading Alaska case on harmless error is *Love v. State*, 457 P.2d 622 (Alaska 1969).  There the court stated:

> But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.  The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had substantial influence.  If so, or if one is left in grave doubt, the conviction cannot stand.

457 P.2d at 631 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).  The critical

---

**4.**  *See Cook v. Kansas City*, 358 Mo. 296, 214 S.W.2d 430, 433 (1948) (juror "guilty of misconduct in informing one or more jurors of his personal knowledge of the blasting and particularly of the crucial fact that the blasting shook the earth").

question is what the error "might have meant" to a jury of "reasonable laymen." *Love,* 457 P.2d at 630. The test for harmless error thus requires us to determine whether on the whole record the error would have had a substantial influence on the verdict of a jury of reasonable laymen.

Although the error in this case affected the composition of the jury itself, we do not believe that the error influenced the jury's verdict. The jury found by special verdict that (1) Dalkovski or Spiroski should have discovered the correct boundaries by July 20, 1979, (2) Strickland made a false statement of material fact, and (3) the false statement was not made for the purpose of inducing Spiroski to rely upon it.

Upon reviewing the record, we do not believe that juror Hackney's personal knowledge could have substantially affected the jury's finding that the misrepresentation was not intended to induce Spiroski's reliance. This finding defeats Dalkovski's claim independently of the statute of limitations problem. Dalkovski has thus failed to show that any prejudice flowed from the decision to retain Hackney as a juror.[5] Although Judge Cranston abused his discretion in retaining Hackney, the error did not substantially affect the jury's verdict for the defendants.[6]

The judgment of the superior court is AFFIRMED.

---

**5.** The jury's finding of lack of intent to induce reliance is amply supported by the evidence.

**6.** See *Chase v. State,* 678 P.2d 1347, 1352 (Alaska App.1984) ("Juror Behm ... probably should have been excused for cause. However, we conclude that [the] failure to allow the defendant to excuse Juror Behm for cause does not constitute reversible error.")