Samuel L. THOMPSON, Appellant
and Cross–Appellee,

v.

Michael J. COOPER and Central
Plumbing & Heating, Appellees
and Cross–Appellants.

Nos. S–14142, S–14162.

Supreme Court of Alaska.

Dec. 7, 2012.

Charles W. Ray, Jr., Law Offices of Charles W. Ray, Jr., P.C., and Marc W. June, Law Office of Marc June, Anchorage, for Appellant/Cross–Appellee.

Matthew D. Regan and Alex Vasauskas, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees/Cross–Appellants.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

### I. INTRODUCTION

In December 2008 Michael Cooper caused a car accident that injured Samuel Thompson. Thompson sued Cooper and Cooper's employer for compensatory and punitive damages. The jury returned a verdict for Thompson for compensatory damages, but not for punitive damages. The parties appeal rulings on evidentiary issues, jury instructions, and denied motions. We affirm most of the superior court's rulings, but we reverse its (1) exclusion of Thompson's treating physicians' opinion testimony on medical causation, and (2) denial of a jury instruction on additional harm. We remand for a new trial on compensatory damages.

### II. FACTS AND PROCEEDINGS

#### A. Facts

Michael Cooper co-owns Central Plumbing & Heating (Central). Cooper was diagnosed with Parkinson's disease in 1994 and experiences symptoms including head and hand tremors. Cooper sees Dr. Mary Downs, a neurologist, for treatment, and he takes several medications to control his symptoms.

Cooper was aware that two of his medications warn users to exercise caution when operating a motor vehicle. Cooper and Dr. Downs had discussed the impact of Parkinson's on Cooper's ability to drive, and Dr. Downs concluded she "didn't see any reason why shouldn't drive if felt comfortable doing it." Dr. Downs testified that at all times before and after the accident she had no concern about Cooper driving and never concluded that Cooper should not operate a motor vehicle. Until the incident underlying this appeal, Cooper had not been ticketed for any traffic violations or been in any major automobile accidents after being diagnosed with Parkinson's disease.

Just prior to the accident, Cooper left Central's downtown Anchorage shop in a company truck to get parts for an ongoing job. Cooper was in the left lane of a three-lane street as he approached an intersection. While changing lanes, Cooper failed to notice his traffic light turn red. Meanwhile, Samuel Thompson had been stopped in his truck at the red light on the intersecting street. When his light changed to green, Thompson pulled out into the intersection. Cooper looked up after his lane change, saw Thompson's truck crossing the intersection, and applied his brakes.

Cooper's truck struck Thompson's. Cooper and Thompson pulled off the roadway, got out of their vehicles, had a 15–20 minute conversation, and exchanged names and telephone numbers. Cooper admitted the accident was his fault. Thompson did not notice anything during their conversation to indicate Cooper was impaired. They called the police to report the accident. Cooper waited in his truck for the police to arrive, while Thompson went inside a nearby building where he and his girlfriend, Amy Christiansen, were employed.

Christiansen testified that immediately following the accident, she observed Cooper looking "messed up" and "spacey." She "wanted the cop to do a DUI test," and thought it was strange that Cooper waited in his truck, noting that most people would get out and check to make sure others are okay. Thompson testified that he observed Cooper appear to fall asleep while waiting for the investigating police officer to arrive at the accident scene.

Police Officer Joel Breiner arrived and conducted an investigation. Officer Breiner spoke to Cooper in close proximity, and he noted in his report that he found no evidence suggesting Cooper was intoxicated by drugs or alcohol. Cooper told the officer that the

accident was his fault. Neither driver reported an injury.

Thompson testified that he had never experienced significant back pain before the accident but began to do so shortly after the accident. Thompson went to an emergency room the night of the accident and was examined for neck and back pain. Emergency care physicians gave him prescriptions and instructed him to follow up with a primary care doctor. He began seeing Dr. James Lord about a week later.

Dr. Lord testified that on Thompson's first visit, Thompson complained of neck and lower back pain. Dr. Lord prescribed Thompson a pain medication and referred him to physical therapy. Thompson returned a few weeks later, claiming that his neck pain had subsided, but his back pain had not. Dr. Lord again prescribed pain medication and referred Thompson to physical therapy, instructing Thompson to return if needed.

Thompson testified that he experienced increasing back pain over the next several months and regularly visited Dr. Lord. He also saw Dr. Estrada Bernard, a neurosurgeon, to address his continuing back pain. Dr. Bernard suggested a discogram and raised the issue of disc replacement surgery. The discogram was performed in April 2009 and demonstrated that Thompson had two damaged discs.

Thompson arranged for disc replacement surgery in Texas. Dr. Richard Guyer performed the surgery in May 2009, replacing Thompson's two injured discs. Thompson then moved to Kodiak and continued recovery under the care of Dr. Hambleton, a family medical practitioner. Thompson testified that he continues to experience low back pain, but it has improved significantly since the surgery.

### B. Proceedings

Thompson filed a complaint against Cooper and Central (collectively "Central") in April 2009. Central answered in June 2009 and ultimately admitted sole liability for Thompson's damages legally caused by the accident.

Thompson submitted a supplemental disclosure giving notice he was seeking punitive damages. Central moved to strike or for summary judgment on Thompson's punitive damages claim, arguing that Thompson had not produced evidence from which a trier of fact could find Cooper acted so outrageously that his conduct constituted "reckless indifference" to Thompson's interests. Thompson responded that Central could be found to have acted recklessly by allowing a driver with "a condition known to adversely affect his driving to continue on 'urgent' errands." The court denied Central's motion, determining there was a genuine issue of material fact whether Cooper failed to follow his doctor's recommendation to take Provigil, a drug "that helps a person stay alert and awake during the day," and whether this failure may have impaired Cooper's driving.

Thompson moved for several pretrial rulings, including the preclusion of evidence concerning whether: (1) his surgery was approved by the FDA or was part of an FDA clinical trial; and (2) Thompson was abusing or addicted to prescription pain medication. Central moved to preclude evidence concerning Cooper's Parkinson's disease. The court reserved for trial the issues of FDA clinical trial evidence and whether Thompson was abusing prescription pain medication. The court granted Central's motion to exclude evidence of Cooper's Parkinson's in part—allowing the evidence only for its relevance to the punitive damages claim concerning Provigil.

Thompson designated testimony from his treating physicians to be used at trial. One aspect of this testimony focused on whether the accident caused Thompson's disc injury. The testimony consisted of the physicians inferring, based on Thompson's statements that his symptoms began after the accident, that he was injured in the accident.

Central objected on several grounds, arguing that the testimony: (1) was improper opinion evidence under *Marron v. Stromstad*;[1] (2) did not comply with Alaska Civil Rule 26(a)(2)(B);[2] and (3) otherwise was ir-

---

**1.** 123 P.3d 992 (Alaska 2005).

**2.** Alaska Civil Rule 26(a)(2)(B) provides that an expert witness must issue a written report that contains:

relevant, unduly prejudicial, confusing, and misleading because it was based upon incomplete hypotheticals, insufficient foundation, and speculation.[3] The superior court sustained many of the objections and subsequently applied the ruling to Dr. Lord's trial testimony on causation as well. The court explained at trial that the testimony was excluded because it was "really not expert testimony" as it was merely a "common sense" inference. The court noted that because this type of causation analysis "doesn't really [f]all into any of the areas of expertise of any expert" it therefore was not the "proper province of expert testimony" and that it "really doesn't help the jury."

During trial Central moved for a directed verdict dismissing Thompson's punitive damages claim, arguing that Dr. Downs had neither believed Cooper needed to take Provigil nor re-prescribed it for him. Thompson pointed to evidence supporting Cooper's impairment at the scene of the accident and in general, as well as evidence that Cooper was aware of his impairment. The superior court denied Central's motion for directed verdict and reiterated its "subtle but important distinction" that the punitive damages claim was limited to whether Thompson could prove Cooper chose not to take Provigil to combat drowsiness, then chose to drive while drowsy

and caused the accident, reasoning this act would be similar to the criminal act of voluntary intoxication.

At trial Central presented expert medical testimony by Dr. James Blue. Dr. Blue reviewed Thompson's medical records and concluded the cause of Thompson's ongoing back pain was unknown, but was not likely caused by any injury sustained in the accident. Dr. Blue noted that Thompson's pain increased significantly following the discogram, and stated that the cause of the injury "if anything would be more likely related to his unnecessary surgery ... or [Thompson's] early degenerative disc disease." Dr. Blue also stated that had the injury sustained in the accident "been allowed to resolve on its own," Thompson would not have experienced his ongoing problems.

To address this evidence, Thompson offered two jury instructions based on the additional harm principle. One was a reproduction of Alaska Civil Pattern Jury Instruction 20.12, providing that a defendant is liable for aggravation of an injury resulting from failure to use reasonable care in providing medical treatment for the original injury.[4] The other "modified [the rule] to fit Central's position as understood by Thompson."[5]

---

[A] complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

3. *Cf.* Alaska Rule of Evidence 403 (providing relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

4. Alaska Civil Pattern Jury Instruction 20.12 provides:

If you find the defendant is legally responsible for the (accident), you may award the plaintiff, in addition to compensation for losses result-

ing from the original injury, (his)(her) losses resulting from:
1. [Aggravation of the original injury resulting from the failure of (insert name or the word "others") to use reasonable care in providing medical or hospital treatment of the original injury.]
2. [Aggravation of the original injury resulting from the failure of (insert name or the word "others") to use reasonable care in transporting the plaintiff to a place where medical treatment is available.]

5. Thompson's modified additional harm instruction provided:

If you find the defendants are legally responsible for the accident, you may award the plaintiff, in addition to compensation for losses resulting from the original injury, his losses resulting from the failure of his physicians or others to use reasonable care in providing medical or hospital treatment of the original injury. Defendants are responsible for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the victim's injury reasonably requires,[ ] even

Central objected to both instructions, arguing that the modified instruction was argumentative and deviated from Alaska law and that the pattern instruction did not apply because there was no testimony that "there had been any failure to use reasonable care by those doctors in providing their care." The superior court refused to submit the instructions on additional harm, finding that the modified instruction was "very confusing" and discussed unnecessary areas of law. The court did not comment on the proposed pattern instruction or find that an additional harm instruction was unnecessary, but it did not give the pattern instruction to the jury.

Thompson also proposed a pattern instruction on superseding cause in light of Central's argument that Thompson's disc injuries were caused by some event that occurred after the accident. Central objected, arguing that the instruction was confusing and presented a legal theory for which there was no factual support. The superior court refused to give the instruction to the jury, explaining that superseding cause is an affirmative defense to be asserted by the defendant, and in this case Central chose not to assert that defense and had not submitted evidence to support the theory. Further, it found that

presenting multiple cause instructions would mislead the jury and was an attempt to improperly "shift the burden of proof" on causation to require that the jury find the accident must have caused the entire extent of Thompson's alleged injury, unless Central proved otherwise.

The jury returned a verdict finding Thompson was entitled to some compensatory damages, but not punitive damages. Both parties appeal several rulings.

## III. STANDARD OF REVIEW

■ We generally review a trial court's decision to admit expert testimony for abuse of discretion[6] and will reverse "only when left with the definite and firm conviction that the trial court erred in its decision."[7] But when the expert testimony's admissibility turns on a question of law, we apply our independent judgment.[8]

■ Jury instructions involve questions of law to which we apply our independent judgment.[9] "When reviewing a trial court's denial of a proposed instruction, our inquiry focuses upon whether the instructions given, when read as a whole, adequately inform the jury of the relevant law."[10] "An error in

---

if the aid is rendered in a negligent manner. If an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the acts of the physician as a part of the immediate and direct damages which naturally flow from the original injury. Such events should be reasonably foreseeable to the Central Plumbing/Cooper [d]efendants[.]

Otherwise, not only would the injured party be forced to second-guess his physician, he would be caught in a vice which offers no correct choice of action. On the one hand, his damages could be reduced if he submitted to the physician's treatment and it was later argued that the physician chose a course of action that was inappropriate and unnecessary. On the other hand, if the patient refused to follow the physician's advice, the tort-feasor could argue that the injured party's damages should be reduced because he failed to follow his physician's instructions. Thus, the injured party is placed in a no win situation.

This means that:

You may not allocate fault to Sam Thompson's physicians for the failure to provide proper medical care. Sam Thompson's physicians are not parties to this case.

You may not reduce Sam Thompson's losses because of the failure of Sam Thompson's physicians to provide reasonable care.

You may not allocate fault to Amy Christianson for her actions or inactions or failure to provide proper medical care. Amy Christianson is not a party to this case.

You may not reduce Sam Thompson's losses because of the failure of Amy Christianson to provide reasonable care.

6. *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005) (citing *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1097 (Alaska 2002)).

7. *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 145 (Alaska 2004) (quoting *L.C.H. v. T.S.*, 28 P.3d 915, 919 (Alaska 2001)).

8. *Marron*, 123 P.3d at 998 (citing *Laidlaw Transit, Inc.*, 53 P.3d at 1097).

9. *See L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 646 n. 50 (Alaska 2007)).

10. *Kavorkian v. Tommy's Elbow Room, Inc.*, 694 P.2d 160, 166 (Alaska 1985) (citing *Searfus v. N.*

jury instructions [is] grounds for reversal only if it caused prejudice."[11] In evaluating whether there has been prejudicial error with regard to jury instructions, we put ourselves in the position of the jurors and "determine whether the error probably affected their judgment."[12]

■ "We review the superior court's grant of summary judgment de novo and draw 'all factual inferences in favor of' and view 'the facts in the light most favorable to the non-prevailing party.'"[13] We will "affirm a grant of summary judgment 'when there are no genuine issues of material fact, and the prevailing party ... [is] entitled to judgment as a matter of law.'"[14]

## IV. DISCUSSION

### A. Compensatory Damages Issues

#### 1. Thompson's treating physicians' opinion testimony on medical causation

■ Thompson appeals the superior court's exclusion of his treating physicians' opinion testimony on medical causation. This testimony consisted of the physicians inferring, based on Thompson's statements that his symptoms began after the accident, that his discs were injured in the accident. Thompson contends the superior court incorrectly found a *Daubert* analysis was required for the admission of his treating physicians' testimony.[15] We agree.

■ Alaska recognizes two general categories of expert testimony: (1) expert opinion based on technical or scientific research and testing; and (2) expert opinion based on practical experience in the relevant field.[16] Expert "testimony based strictly on 'scientific knowledge,' that is, knowledge that has been 'derived by the scientific method,'" is generally subject to *Daubert*'s reliability and relevance requirements,[17] but experience-based expert testimony does not need to meet *Daubert*'s requirements.[18] Instead it is admissible "when the expert witness has substantial experience in the relevant field and the testimony might help the jury."[19]

Central argues that a *Daubert* analysis was required here based on our decision in *Marron v. Stromstad.* Central misreads *Marron.* In *Marron* we recognized that many federal courts have applied *Daubert* to exclude causation testimony by treating physicians, but we explicitly stated that the expert opinion in that case concerned Marron's course of treatment and did not address causation.[20] We expressly declined to extend the *Daubert* rule to all expert testimony, and instead limited *Daubert* to "expert testimony based on scientific theory, as opposed to testimony based upon the expert's personal experience."[21]

Although we recognized there is not a clear divide between the two general categories, we noted that experience-based testimo-

---

*Gas Co.,* 472 P.2d 966, 970 (Alaska 1970); *Perzinski v. Chevron Chem. Co.,* 503 F.2d 654, 660 (7th Cir.1974)).

11. *State, Dep't of Corr. v. Johnson,* 2 P.3d 56, 59 (Alaska 2000) (citing *Coulson v. Marsh & McLennan, Inc.,* 973 P.2d 1142, 1150 n. 21 (Alaska 1999)).

12. *Reich v. Cominco Alaska, Inc.,* 56 P.3d 18, 25 (Alaska 2002) (quoting *Cable v. Shefchik,* 985 P.2d 474, 479 (Alaska 1999)).

13. *Peterson v. State, Dep't of Natural Res.,* 236 P.3d 355, 361 (Alaska 2010) (quoting *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005)).

14. *Id.* (quoting *Rockstad,* 113 P.3d at 1219).

15. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (establishing test for assessing admissibility of scientific expert testimony); *State v.*

*Coon,* 974 P.2d 386, 395–98 (Alaska 1999) (partially adopting the *Daubert* test in Alaska).

16. *Marsingill v. O'Malley,* 128 P.3d 151, 159 (Alaska 2006).

17. *Daubert* 509 U.S. at 589–95, 113 S.Ct. 2786; *Coon,* 974 P.2d at 395–98.

18. *See Marron v. Stromstad,* 123 P.3d 992, 1004 (Alaska 2005) (declining to adopt *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), extension of *Daubert* to all expert testimony).

19. *Marsingill,* 128 P.3d at 160; *see also* Alaska Evidence Rule 702(a).

20. *Marron,* 123 P.3d at 1001.

21. *Id.* at 1004.

ny generally "is not empirically verifiable or objectively testable,"[22] and "depend[s] on a more subjective application of the expert's practical experience to the particular facts of the case,"[23] while "scientific testimony is based on theory, and may be subjected to objective testing."[24] We later reiterated this point in *Marsingill v. O'Malley,* noting that in *Marron* "we limited our reliance on the *Daubert* test to expert testimony based on scientific theory" and that "testimony based on personal experience is not covered by this standard."[25]

Thompson's treating physicians were experience-based experts. All had experience in treating injuries like Thompson's and they were familiar with his injury in particular. All three doctors relied on this experience in developing an opinion on causation, subjectively applying their practical experience to the particular facts of Thompson's injury. Their opinions on causation were neither empirically verifiable nor objectively testable. It therefore was error to exclude such evidence under *Daubert* and *Coon.*

■ Central nonetheless argues the exclusion of this evidence was proper under two other theories. First, Central claims the exclusion of this evidence was proper because Thompson did not comply with Rule 26(a)(2)(B)'s disclosure requirements.[26] But

we have recognized that Rule 26(a)(2)(B) does not apply when the expert is the party's treating physician because a treating physician's testimonial role is "unique."[27] "Retained experts are presumed to be under the control of the party retaining them and are thus presumed to be cooperative,"[28] but no such presumption is justified regarding a treating physician, whose testimony is based on experience attending to the patient rather than being hired to review a file and develop an opinion.

■ Central next argues that the physicians' causation testimony was properly excluded under Evidence Rule 403 because the probative value of the testimony was outweighed by the danger of confusion of the issues or misleading the jury. But the superior court did not engage in this weighing and so could not have based its decision on Rule 403, and we do not believe the claimed risks outweigh the probative value of the evidence in this case.[29]

■ Because causation was the central issue at trial, we conclude that the exclusion could have had a substantial influence on the verdict and was sufficiently prejudicial to constitute reversible error. Therefore we remand for a new trial on compensatory damages.

**22.** *Id.* at 1006.

**23.** *Id.*

**24.** *Id.*

**25.** *Marsingill v. O'Malley,* 128 P.3d 151, 160 (Alaska 2006) (affirming superior court's finding that physicians who derived their expertise from experience did not have to meet *Daubert*'s requirements).

**26.** Rule 26(a)(2)(B) provides:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by

the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

**27.** *Fletcher v. S. Peninsula Hosp.,* 71 P.3d 833, 844–45 (Alaska 2003); *see also Miller v. Phillips,* 959 P.2d 1247, 1250 (Alaska 1998) (noting "[w]hen physicians are called to testify about matters pertaining to the treatment of their patients, the distinction between an expert witness and a fact witness inevitably becomes blurred").

**28.** *Fletcher,* 71 P.3d at 845 n. 59.

**29.** We also disagree with Central's additional argument that the treating physicians' testimony could not "assist the trier of fact to understand the evidence or determine a fact in issue," and

### 2. Additional harm instruction

 A tortfeasor is generally liable for the consequences of any resulting injury, as well as any additional harm associated with medical care administered as an adjunct to the original injury.[30] Thompson argues it was error to refuse to instruct the jury on this additional harm principle when Central's defense included the argument that several medical "misjudgments" by Thompson's physicians worsened Thompson's back injury. We agree.

 The superior court did not determine that an additional harm instruction was unnecessary, but determined only that Thompson's modified version was too confusing to submit to the jury. But the superior court was still required to instruct the jury on additional cause, as Central's theory fit squarely within the pattern instruction Thompson proposed.[31] Due to the lack of this instruction, the jury may have accepted Central's argument and failed to allow Thompson recovery for any additional harm caused by his doctors' alleged misjudgments. This constitutes prejudicial and reversible error, and provides further reason to remand for a new trial on compensatory damages.

### 3. Superseding cause instruction

 Thompson appeals the superior court's refusal to instruct the jury on superseding cause. He argues that while it is "usually [the] defendant[ ] that seek[s] a superseding cause instruction," he "merely wished to arm the jury with the tools to assess" Central's claims regarding the occurrence of a "phantom event" unrelated to the car accident that caused Thompson's injuries.

The superior court reasonably found the instruction was unnecessary, as no party as-

serted the defense and it had the potential to mislead and confuse the jury.[32] Unlike an additional harm instruction, a superseding cause instruction would have been inconsistent with Central's admission of liability for Thompson's damages legally caused by the accident, as well as other instructions directing the jury to note Central had admitted negligence and that the issue to be decided was the amount of damages. We conclude that the superior court did not err in declining to give the requested instruction.

### 4. Evidence of Thompson's alleged drug abuse and FDA approval of Thompson's surgery

Prior to trial Thompson moved for a ruling precluding references to his alleged addiction to or abuse of pain medication and barring evidence concerning whether his surgery was approved by the FDA or part of an FDA clinical trial. The superior court reserved the issues for trial. Thompson did not renew or otherwise raise his objections at trial when Central presented Dr. Guyer's deposition testimony regarding the FDA clinical trials. Nor did he renew or otherwise raise his objections at trial when Central presented evidence regarding alleged pain medication abuse or addiction. Thompson nonetheless appeals, arguing the superior court erred in allowing Central to introduce the evidence at trial because it would confuse and mislead the jury and was not probative of any disputed fact.

Because the case is being remanded for a new trial on compensatory damages, and we do not know the course of those proceedings, we leave the determination of these evidentiary issues to the future discretion of the superior court.[33]

---

therefore was inadmissible under Evidence Rule 702(a).

**30.** *See Lucas v. City of Juneau,* 127 F.Supp. 730, 731–32 (D.Alaska 1955); *see generally* Restatement (Second) of Torts § 457 (1965).

**31.** *See Parnell v. Peak Oilfield Serv. Co.,* 174 P.3d 757, 764 (Alaska 2007) (citing *Clary Ins. Agency v. Doyle,* 620 P.2d 194, 201 (Alaska 1980)) (recognizing a party is generally entitled to a jury instruction if it is consonant with theory of case and supported by evidence).

**32.** *See, e.g., Crosby v. Hummell,* 63 P.3d 1022, 1026 (Alaska 2003) (holding trial court did not err in refusing to give instruction which "might have caused" jury significant confusion).

**33.** *See, e.g., Schofield v. City of St. Paul,* 238 P.3d 603, 609 (Alaska 2010) ("[W]e express no opinion on the other evidentiary errors Schofield alleges. Because it is unknown what specific evidence will be introduced on remand and what objections might be raised, we leave the determination of those eventual issues to the discretion of the superior court.").

## B. Punitive Damages Issues

### 1. Grant of summary judgment dismissing punitive damages based on factors other than Provigil use

■ Thompson appeals the superior court's summary judgment order dismissing his punitive damages claim, arguing the superior court erred in ruling that *Hayes v. Xerox Corp.*[34] precluded Thompson from arguing for punitive damages based on allegations of Cooper's failure to use required eyewear, speeding, impairment by Parkinson's disease and medication, and cell phone usage.

■ In *Hayes* we concluded that a driver's failure to see a red light due to a momentary distraction did not warrant the submission of a punitive damages claim.[35] In reaching this decision, we relied upon the following Restatement language:

> It is reckless for a driver of an automobile intentionally to cross a through highway in defiance of a stop sign if a stream of vehicles is seen to be closely approaching in both directions, but if his failure to stop is due to the fact that he has permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless.[36]

Thompson disputes that *Hayes* provides a universal rule barring punitive damages in cases of a momentary diversion of attention. He points out that in *Hayes* we provided that a momentarily distracted driver "*may* be merely negligent and not reckless"[37] and contends that this language implies "the issue becomes one of degree." We agree that we did not intend to issue a universal rule regarding momentary distraction in *Hayes*; but we do not believe the facts differentiating this case from *Hayes*, even when viewed in the light most favorable to Thompson,[38] required the superior court to deny summary judgment on factors unrelated to Cooper's Provigil use.

■ Thompson's speculative arguments are not sufficient to raise a genuine issue of material fact.[39] For example, Thompson asserts Cooper was not wearing required corrective eye-wear when the accident occurred. But the evidence was that Cooper does not have a problem seeing at a distance and needs only reading glasses. Thompson also asserts Cooper was speeding at the time of the collision based solely on the fact that Cooper agreed his trip was "urgent," rather than on any evidence demonstrating Cooper was driving over the speed limit. Thompson asserts that Cooper was using his cell phone at the time of the accident. But even if true, Alaska law does not prohibit talking on a cell phone while driving. We have never ruled that using a cell phone while driving, alone, amounts to reckless indifference, and we decline to do so here.

Similarly, Thompson asserts Cooper was impaired by his Parkinson's disease and the medication he takes to treat it. But Thompson concedes "there is no direct evidence as to the severity of Cooper's Parkinson's or the effects of Parkinson's medication immediately at the time of the accident." No evidence in the record indicates Cooper ever experienced negative side effects from his Parkinson's medications. At all times before and after the accident Dr. Downs had no concerns about Cooper's driving and never concluded that he should not be operating a motor vehicle. Additionally, Richard Cook, Central's general manager, testified that he had ridden with Cooper five to six times per year and had always observed that Cooper drove normally. Parkinson's disease is progressive, and although a person may eventually have serious enough effects from the disease to preclude driving, the mere fact that a person has Parkinson's disease and takes medications is not evidence the person is unfit to drive a vehicle. This also disposes of Thompson's additional speculative argu-

---

**34.** 718 P.2d 929 (Alaska 1986).

**35.** *Id.* at 936.

**36.** *Id.* at 935 (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 500 cmt. b (1964)).

**37.** *Id.* (emphasis added).

**38.** *Peterson v. State, Dep't of Natural Res.*, 236 P.3d 355, 361 (Alaska 2010) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

**39.** *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 661 (Alaska 2006).

ment that Cooper's failure to inform Officer Breiner of his Parkinson's disease amounted to "hiding his condition" and is an "implicit admission that [his] Parkinson's symptoms do, in fact, adversely affect his driving, that Cooper appreciates this fact, and that any testimony to the contrary is untruthful."

We conclude Thompson did not present sufficient evidence to establish a genuine factual dispute on whether Cooper was recklessly operating his vehicle on the day of the accident or on any issue other than Cooper's Provigil use.

### 2. Other issues

The superior court did not err in limiting the scope of Thompson's punitive damages claim, and the jury ultimately found no liability for punitive damages. We therefore do not need to reach Central's appeal points regarding the superior court's denial of: (1) Central's motion to prohibit evidence of Cooper's Parkinson's disease; (2) Central's motion for summary judgment on Thompson's punitive damages claim;[40] and (3) Central's motion for directed verdict on Thompson's punitive damages claim.[41] None of these issues should arise in the forthcoming proceedings on remand, which are limited to a new trial on compensatory damages.

## V. CONCLUSION

We REVERSE the superior court's rulings precluding treating physicians' testimony on causation and declining to give an "additional harm" instruction and REMAND for a new trial on compensatory damages. We otherwise AFFIRM the superior court's rulings as discussed above.

---

**40.** We note that the denial of a summary judgment motion due to a factual dispute may not be appealed after trial. *Cameron v. Chang–Craft,* 251 P.3d 1008, 1017 (Alaska 2011) (citing *Larson v. Benediktsson,* 152 P.3d 1159, 1169 (Alaska 2007)).

**41.** We note that where a directed verdict motion is denied and the jury ultimately finds in favor of the moving party, the directed verdict denial generally should be moot.